**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EFRAIN PEREZ,** | : | |
| **Petitioner** | : | |
| | : | **No. 1:22-cv-01028** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **WARDEN SAGE,** | : | |
| **Respondent** | : | |

## <u>MEMORANDUM</u>

Pending before the Court is <u>pro se</u> Petitioner Efrain Perez ("Petitioner")'s petition for a writ of habeas corpus filed pursuant to the provisions of 28 U.S.C. § 2241 ("Section 2241"). Petitioner asserts that he was wrongfully found guilty of a disciplinary charge, which resulted in the loss of good-conduct time and other privileges. Also pending before the Court are Petitioner's various motions. For the reasons set forth below, the Court will deny the Section 2241 petition and deny, as moot, the pending motions.

## I.    BACKGROUND

Petitioner, a prisoner in the custody of the Federal Bureau of Prisons ("BOP"), is currently serving an aggregate seventy-seven (77) month sentence imposed by the United States District Court for the District of New Hampshire for narcotics offenses. (Doc. No. 6-1 at 3, ¶ 3.) His projected release date, via good conduct time, is August 20, 2025. (<u>Id.</u>)

On December 20, 2021, at approximately 5:16 p.m., while Petitioner was incarcerated at Federal Correctional Institution Schuylkill ("FCI Schuylkill") in Minersville, Pennsylvania, he provided a urine sample. (<u>Id.</u> at ¶ 6; <u>id.</u> at 19.) On January 3, 2022, PHAMATECH Laboratories notified the Special Investigative Services Department that the urine sample had tested positive for the presence of THC. (<u>Id.</u>) A review of Petitioner's medical file revealed that he was not prescribed any medication which would have tested positive for the presence of THC. (<u>Id.</u>) On

that same date, the investigating lieutenant delivered Incident Report 3583413 to Petitioner,

charging him with Prohibited Act Code 112—Use of Drugs/Alcohol.  (Id. at 19.)  As noted in the

incident report, Petitioner was advised of his rights concerning the disciplinary process.  (Id. at

21.)  Petitioner had no comment and did not request any witnesses.  (Id.)  The incident report

was then referred to the Unit Disciplinary Committee for a hearing.  (Id.; id. at 24–26.)

On January 11, 2022, Petitioner appeared before a Discipline Hearing Officer ("DHO").

(Id. at 24.)  Petitioner waived his right to be assisted with a staff representative and did not call

any witnesses or present any documentary evidence.  (Id. at 24–25.)  In addition, and according

to the DHO's report, Petitioner stated, "I admit to it.  I'm guilty."  (Id. at 15.)  According to

Petitioner, however, he stated: "If what I am being charged with is providing a dirty urine, then I

am guilty, but if you're asking did I use drugs in your prison or in the BOP, I did not[,]" or

"words to that effect."  (Doc. No. 1 at 10.)  Ultimately, the DHO found that Petitioner committed

Prohibited Act Code 112—Use of Drugs/Alcohol.  (Doc. No. 6-1 at 25.)  The DHO's finding

was based upon the written account of the reporting officer, the BOP Chain of Custody form, the

PHAMATECH Laboratories report, and Petitioner's admission of guilt.  (Id.)  As a result, the

DHO sanctioned Petitioner with disallowance of forty-one (41) days' good-conduct time, forty

(40) days' disciplinary segregation, and loss of email and visitation privileges for eight (8)

months.  (Id. at 26.)

On March 11, 2022, Petitioner appealed the DHO's decision to the Regional Office via

Remedy 1114539-R1.  (Id. at 18.)  His appeal was rejected on March 24, 2022, for being

illegible, and he was afforded ten (10) days to resubmit his appeal.  (Id.; Doc. No. 1 at 2.)

Respondent argues, and Petitioner concedes, that he did not resubmit his appeal.  (Doc. No. 1 at

3; Doc. No. 6 at 5).  The parties sharply dispute, however, whether Petitioner should be excused

from having done so based upon the availability (or unavailability) of the administrative remedy process to Petitioner.

Thereafter, on June 30, 2022, Petitioner filed his Section 2241 petition in this Court (Doc. No. 1), along with various exhibits (Doc. Nos. 1-2 through 1–14).  Following initial administrative matters, the Court, on August 31, 2022, deemed the petition filed, directed service of the petition on Respondent, who is the Warden at FCI Schuylkill, and directed Respondent to file a response to the petition.  (Doc. No. 4.)  On September 20, 2022, Respondent filed her response.  (Doc. No. 6.)  Thereafter, on October 25, 2022, Petitioner filed his reply.  (Doc. No. 11.)  Petitioner has also filed numerous motions (Doc. Nos. 7, 9, 10, 12),[1] none of which have been accompanied by a brief in support, as required by the Court's Local Rules.  See M.D. Pa. L.R. 7.5.

Thus, the instant Section 2241 petition, which has been fully briefed by the parties, is ripe for the Court's resolution.  For the reasons discussed below, the Court will dismiss the petition and deny, as moot, the pending motions.

## II.    DISCUSSION

Petitioner contends that the evidence presented at his disciplinary hearing on January 11, 2022, was insufficient to find him guilty of committing Prohibited Act Code 112—Use of Drugs/Alcohol.  (Doc. No. 1.)  In support, Petitioner alleges that the THC positive urine sample that was collected by BOP officials was a result of Petitioner using drugs prior to him being in BOP custody.  (Id.; Doc. No. 11.)   In further support, Petitioner cites to BOP Program Statement

---

[1]  Specifically, Petitioner has filed a motion for summary judgment (Doc. No. 7), a motion to withdraw his motion for summary judgment (Doc. No. 9), a motion to amend his Section 2241 petition in order to correct a single date (Doc. No. 10), and a motion concerning, inter alia, incoming legal mail at BOP institutions (Doc. No. 12).

6060.08, which pertains to urine testing for drug use, and asserts that the BOP did not follow this Program Statement with respect to his urine sample.  (Id.)  More specifically, Petitioner appears to argue that BOP officials should not have collected his urine sample until at least thirty (30) days after he had entered BOP custody.  (Id.)  As for relief, he requests that the Court order the BOP to expunge his disciplinary record and to restore his good-conduct time, as well as his email and visitation privileges.  (Doc. No. 1 at 7.)

In response to the petition, Respondent has asserted three (3) arguments.  Her first argument is that Petitioner did not exhaust his administrative remedies before petitioning this Court for habeas relief.  (Id. at 5–8.)  Her second argument is that Petitioner received all of the due process rights to which he was entitled during his disciplinary proceedings and that the DHO's decision was supported by "some evidence[,]" as required by the applicable legal standard.  (Id. at 8–13.)  And, her third argument is that Petitioner's claim concerning the BOP's failure to follow Program Statement 6060.08 has no merit.  (Id. at 13–14.)

Having reviewed the parties' respective arguments, the underlying record in this matter, and relevant authorities, the Court agrees with Respondent that the petition is subject to dismissal.  Because the Court ultimately concludes that the petition is without merit, the Court need not address the sharply disputed issue of exhaustion.  See Turnage v. U.S. Att'y Gen., No. 07-cv-01391, 2009 WL 604141, at *4 (M.D. Pa. Mar. 9, 2009) (declining to determine whether Section 2241 petitioner should be excused from failing to exhaust his administrative remedies because the petition was without merit).

The Court treats Petitioner's Section 2241 petition as asserting a due process challenge under the Fifth Amendment to the United States Constitution based upon allegations that the BOP deprived him of good-conduct time, as a disciplinary sanction, without sufficient evidence.

(Doc. No. 1; Doc. No. 11.)  The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law[.]"  See U.S. Const. amend. V.  Prisoners have a constitutionally protected liberty interest in good-conduct time.  See Wolff v. McDonnell, 418 U.S. 539, 555–57 (1974).  However, "while prisoners retain certain basic constitutional rights, including the protections of the [D]ue [P]rocess [C]lause, prison disciplinary hearings are not part of criminal prosecution, and inmates' rights at such hearings may be curtailed by the demands and realities of the prison environment."  See Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991) (citing Wolff, 418 U.S. at 555–56).

In Wolff, the United States Supreme Court set forth the due process protections that prisoners are entitled to "when prison officials seek to deprive them of good-time credits[.]"  See Burns v. PA Dep't of Corr., 642 F.3d 163, 171–72 (3d Cir. 2011).  Those protections require: (1) an impartial decision-making body; (2) written notice of the charges, which must be given to the prisoner no less than twenty-four (24) hours before his appearance at the disciplinary hearing so that he can marshal the facts and prepare a defense; (3) the opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals;" and (4) a written statement by the fact finder as to the evidence relied upon and the reasons for the disciplinary action.  See Wolff, 418 U.S. at 563–71. Additionally, the United States Supreme Court has explained that, where an illiterate prisoner is involved or where the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence that is necessary for an adequate command of the case, the prisoner "should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent [prisoner] designated by the staff."  See id. at 570.

Where, as here, a prisoner challenges a disciplinary proceeding that deprived him of good-time credits, "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke [such] credits." See Superintendent, Massachusetts Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985).  In other words,  "[t]his standard is met if there was some evidence from which the conclusion of the [disciplinary board] could be deduced[.]"  See id. (citation and internal quotation marks omitted).  Thus, determining "whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."  See id.  Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  See id. at 455–56 (emphasis added) (citations omitted).

The United States Supreme Court has declined to embrace "a more stringent evidentiary standard as a constitutional requirement."  See id. at 456.  And, in declining to do so, the Supreme Court has explained as follows:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. See Wolff, 418 U.S., at 562–563[.] The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, id. at 556[,] and neither the amount of evidence necessary to support such a conviction, see Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), nor any other standard greater than some evidence applies in this context.

See id.

In applying this governing legal standard here, Petitioner has not shown that he was deprived of these due process protections.  Petitioner received advance notice of the charges against him when the investigating lieutenant delivered a copy of Incident Report 3583413 to him on January 3, 2022.  (Doc. No. 6-1 at 19, 21.)  Petitioner subsequently appeared, "via video

call" (Doc. No. 11 at 4), for his disciplinary hearing on January 11, 2022, and thus had one full week to marshal the facts and prepare a defense for his hearing (Doc. No. 6-1 at 24–26). Petitioner was advised of his procedural rights before the hearing proceeded (id. at 24), and he was given the opportunity to make a statement and to present witnesses and documentary evidence in his defense (id. at 25). Petitioner was also provided a copy of the DHO's written statement, which sets forth the evidence relied upon and the reasons for the disciplinary sanctions imposed. (Id. at 25–26.) In addition, Petitioner makes no argument, and the record does not suggest, that this DHO was personally or affirmatively involved in the underlying incident (i.e., the collection of Petitioner's urine sample) or any other part of the initial disciplinary process.

Although Petitioner does not appear to dispute[2] that he was afforded these procedural protections, he challenges the sufficiency of the evidence that was used to find him guilty of the disciplinary charge. More specifically, Petitioner argues that the BOP failed to follow Program Statement 6060.08 when a urine sample was collected from him after being in BOP custody for only twenty-one (21) days, as opposed to the thirty (30)-day timeframe set forth in that Program Statement. (Doc. Nos. 1, 11.)

Program Statement 6060.08 provides, in pertinent part, as follows:

DETECTION PERIODS FOR SELECTED DRUGS

**The time periods below are estimates of the maximum lengths of time, after last use, that a person's urine would be positive for a particular drug**. These periods also represent the minimum waiting periods between samples on which successive disciplinary actions for the same drug ordinarily may be based. For example, ordinarily at least 30 days must elapse between urine collection dates before disciplinary action may be taken for a second THC positive. The inmate

---

[2] Petitioner has filed a fairly lengthy handwritten petition and reply. (Doc. Nos. 1, 11.) On occasion, his handwriting is difficult to read, and his arguments are difficult to follow. The Court has, nevertheless, done its best to understand his position and to recount it here.

7

could, however, be retested within this 30-day period and disciplinary action
could be based on positive results for drugs other than THC.

| | |
|---|---|
| 3 days | Amphetamines |
| | Methamphetamine |
| | Cocaine |
| | Cocaine Metabolite |
| | |
| 5 days | Methadone |
| | Methadone Metabolite |
| 6 days | Morphine |
| | Codeine |
| | Opiates |
| | Meperidine (Demerol) |
| | Pentazocine (Talwin) |
| | Propoxyphene (Darvon) |
| | |
| 11 days | Barbiturates |
| | Phencyclidine (PCP) |
| | |
| 14 days | Phenobarbital |
| | |
| **30 days** | **THC** |

(Doc. No. 6-1 at 38 (emphasis added).)

Petitioner construes this language to mean that the BOP's estimate of the maximum

length of time, after last use, that an individual's urine would test positive for THC is thirty (30)

days. Based upon this interpretation, Petitioner argues that his positive test result for THC

constitutes insufficient evidence to find him guilty of using drugs while in BOP custody because

BOP officials failed to wait thirty (30) days before testing his urine. (Doc. Nos. 1 at 9 (alleging

that he entered BOP custody on November 29, 2021, and that he was subject to a urine test on

December 20, 2021); 1-2 at 1 (containing Petitioner's "Sentence Monitoring Computation Data"

as of January 12, 2022, which shows that Petitioner was committed to BOP custody on

November 29, 2021); 6-1 at 19 (containing Incident Report 3583413, which reflects that

Petitioner provided his urine sample on December 20, 2021, at approximately 5:16 p.m.).) And,

in further support of this argument, Petitioner adamantly contends that he did not just admit guilt

at his disciplinary hearing, as suggested by the DHO (Doc. No. 6-1 at 24), but that he stated: "If

what I am being charged with is providing a dirty urine, then I am guilty, but if you're asking did

I use drugs in your prison or in the BOP, I did not[,]" or "words to that effect" (Doc. No. 1 at

10).

      The Court is not persuaded by Petitioner's arguments.  At the outset, the Court notes that

the Due Process Clause of the United States Constitution—and not the contents of the BOP's

Program Statement—governs the protections afforded to a petitioner.  See, e.g., Cooper v. Jones,

372 F. App'x 870, 872 (10th Cir. 2010) (unpublished) (stating that "[t]he process due here is

measured by the Due Process Clause of the United States Constitution, not the internal policies

of the prison").[3]  Accordingly, the BOP officials' asserted failure to follow the contents of

Program Statement 6060.08 does not automatically equate to a due process violation.[4]  Instead,

Petitioner's due process claim turns on whether the DHO's decision was supported by "some

evidence" in the record.

---

[3]  In this Memorandum, the Court has cited two (2) non-precedential opinions ("NPOs") from
federal appellate courts.  The Court notes that these NPOs contain persuasive reasoning and,
thus, they have been used as a paradigm of legal analysis.  See New Jersey, Dep't of Treasury,
Div. of Inv. v. Fuld, 604 F.3d 816, 823 (3d Cir. 2010) (observing that an NPO "is only as
persuasive as its reasoning"); Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 n.12 (3d Cir.
1996) (looking to a factually similar NPO "as a paradigm of the legal analysis").

[4]  This is especially true where, as here, the relevant language in Program Statement 6060.08
reads as having flexibility.  See (Doc. No. 6-1 at 38 (stating that the time periods for detecting
selected drugs "are estimates of the maximum lengths of time, after last use, that a person's urine
would be positive for a particular drug" (emphasis added))); see also Sandin v. Conner, 515 U.S.
472, 481–82 (1995) (explaining that a "prison regulation [is] primarily designed to guide
correctional officials in the administration of a prison" and not "to confer rights on inmates
. . . "); Reno v. Koray, 515 U.S. 50, 61 (1995) (explaining that the BOP's Program Statement
constitutes an "internal agency guideline" akin to an "interpretive rule" (citations and internal
quotation marks omitted)).

As noted above, the burden imposed by the "some evidence" standard is minimal. <u>See</u> <u>Hill</u>, 472 U.S. at 455–56 (explaining that whether the "some evidence" standard has been satisfied does not require the court to conduct an examination of the entire record, to independently assess the credibility of witnesses, or to weigh the evidence and that, instead, the "relevant question is whether there is <u>any</u> evidence in the record that <u>could</u> support the conclusion reached by the disciplinary board" (emphasis added)). Applying that standard here, the Court concludes that there is "some evidence" in the record that supports the DHO's determination: the presence of THC in Petitioner's system while in BOP custody.

The Court observes that the presence of THC in Petitioner's system gives rise to three (3) reasonable inferences as to when he could have used drugs: before entering BOP custody; during BOP custody; or <u>both</u> before and during BOP custody. Because some of these inferences support a finding that Petitioner used drugs during BOP custody, the DHO's decision has "some basis in fact." <u>See</u> <u>Denny v. Schultz</u>, 708 F.3d 140, 145 (3d Cir. 2013) (explaining that "a reviewing court need only find that the DHO's decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause (quoting <u>Hill</u>, 472 U.S. at 456)); <u>see, e.g.</u>, <u>Falkiewicz v. Grayson</u>, 271 F. Supp. 2d 942, 948 (E.D. Mich. 2003) (explaining that "the evidence <u>need not</u> logically preclude any conclusion but the one reached by the hearing officer" (emphasis added)). Accordingly, the Court concludes that the presence of THC in Petitioner's system constitutes "some evidence" in the record.

The Court will, therefore, deny Petitioner's request for habeas relief. <u>See generally</u> <u>Void v. Warden Fort Dix FCI</u>, 345 F. App'x 818, 820–21 (3d Cir. 2009) (unpublished) (citing to BOP Program Statement 6060.08 and affirming the district court's denial of a Section 2241 petition, despite the inmate's post-disciplinary hearing claim of medical complications with urinating).

**III.**      **CONCLUSION**

For the foregoing reasons, the Court will deny the instant Section 2241 petition.  (Doc.

No. 1.)  In addition, the Court will deny Petitioner's pending motions as moot.  (Doc. Nos. 7, 9,

10, 12.)  An appropriate Order follows.